UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUAN CARLOS GREGORIO-CHACON,** | Civil Action No. 16-2768 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **LORETTA LYNCH, et al.,** | |
| Respondents. | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Juan Carlos Gregorio-Chacon, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1-5). Following an order to answer (ECF No. 6), the Government filed a response to the Petition (ECF No. 11). Petitioner did not file a reply brief. For the following reasons, this Court will deny the petition without prejudice.

**I. BACKGROUND**

Petitioner, Juan Carlos Gregorio-Chacon, is a native and citizen of El Salvador who originally entered this country at an unknown time and place. In 2014, Petitioner applied for and was granted deferred action status under immigration's Deferred Action for Childhood Arrivals (DACA) program. (ECF No. 5 at 2). He was thus granted deferred action status between April 2014 and April 15, 2016. (Document 1 attached to ECF No. 11 at 8). In June of 2014, Petitioner requested and was granted permission to travel abroad back to El Salvador. (*Id.*). Petitioner did so, and sought to return to this country on July 20, 2014. (*Id.*). On that date, Petitioner arrived at Newark airport and sought to be admitted back into the United States. (*Id.*). Immigration officials

1

at that time paroled him into the United States "for one day as per DACA." (*Id.*). Petitioner was thus not admitted into the country at that time.

On August 9, 2014, Petitioner fatally struck and killed a woman in Lakewood, New Jersey. (ECF No. 5 at 2-3). Petitioner was thereafter charged with a Third Degree offense based on his causing death while driving on a suspended license. (*Id.*). Petitioner was arrested on that offense in January 2016, and pled guilty on February 22, 2016, ultimately resulting in his receiving a forty-five day jail sentence and one year probation. (Document 1 attached to ECF No. 11 at 8).

Following his conviction, Petitioner filed an application for an extension of his deferred action status in March 2016, which, at the time he filed his petition, had not been ruled upon by immigration officials. (ECF No. 5 at 3). Because Petitioner's extension had not yet been granted, Petitioner's deferred action status expired on April 15, 2016, and immigration officials sought him out, arrested him, and took him into custody on April 18, 2016. (Document 1 attached to ECF No. 11 at 8). At that time, Petitioner was also served with a notice to appear charging that he was an arriving alien who was inadmissible because he did not possess a valid visa, re-entry permit, or other valid basis for entry into the United States. (*Id.* at 2). Petitioner has remained in immigration custody since April 18, 2016, and has therefore been incarcerated for approximately six months at this time.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody"

and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

**1. The Statutory Basis for Petitioner's Detention**

In his habeas petition, Petitioner contends that he is being held in violation of the Due Process Clause because he is being detained by immigration officials despite his attempt to have his prior DACA period extended. The Government, however, contends that Petitioner is properly being held as an arriving alien who is inadmissible, and is therefore being held pursuant to 8 U.S.C. § 1225(b)(2)(A). As Petitioner's entitlement to relief depends on the basis for his detention, this Court must first determine the basis for his detention before evaluating Petitioner's entitlement to relief.

In his petition, Petitioner presents no information regarding the basis for his detention, but implies that it is connected to his having been convicted of a species of vehicular manslaughter, suggesting that Petitioner believes he is being held pursuant to 8 U.S.C. § 1226(c). While § 1226(c) controls the detention of aliens who have effected entry into this country and are now removable based on their having committed a felony, 8 U.S.C. § 1225(b)(2)(A) provides that an arriving alien is considered "an applicant for admission" and that such applicants for admission must be detained for removal proceedings "if the examining immigration officer determines that

an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Although § 1225(b)(2)(A) requires inadmissible arriving aliens to be detained, it does permit immigration officials to parole those aliens into the United States. *See* 8 U.S.C. § 1182(d)(5)(A). Being paroled into the United States, however, does not affect an alien's status – he is not deemed admitted into the United States merely because he was paroled, and is instead still considered to be standing at the border for all legal purposes. *Id.* ("such parole . . . shall not be regarded as an admission of the alien and when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."); *Kay v. Reno*, 94 F. Supp. 2d 546, 554 (M.D. Pa. 2000) (describing the "entry fiction" which provides that an alien who is paroled is considered to remain at the border and is not deemed admitted into the United States).

Here, Petitioner last returned to this Country in July 2014. At that time, he was not deemed admitted into the country, but was instead paroled into the United States as an inadmissible arriving alien subject to DACA. Petitioner as a result was never admitted into the United States and is subject to the entry fiction. Petitioner is therefore an inadmissible arriving alien, and is subject to detention under 8 U.S.C. § 1225(b)(2)(A), rather than under § 1226(c), his criminal conviction notwithstanding.

**2. Petitioner's Due Process Claim**

Petitioner essentially asserts that his current detention violates Due Process. Because this Court concludes that Petitioner is held under 8 U.S.C. § 1225(b)(2)(A), Petitioner's entitlement to relief from detention depends entirely on whether the Government may hold him without bond for

approximately six months under that statute.[1]  Another court in this District recently considered the propriety of seemingly indefinite detention under the statute and concluded that detention under § 1225(b)(2)(A) for just under a year did not violate Due Process as applicants to admission are entitled to lesser protection than removable aliens detained pursuant § 1226(c).  *See Damus v. Tsoukaris*, No. 16-933, 2016 WL 4203816, at *2-4 (D.N.J. Aug. 8, 2016).  The *Damus* court explained as follows:

> To the extent that Petitioner asserts a constitutional claim for relief [from immigration detention], such a claim would be affected by his status as an applicant for admission rather than an alien who has previously entered the country.  *See, e.g., Maldonado v. Macias*, 150 F. Supp. 3d 788, 798-800 (W.D. Tex. 2015).  Petitioner's status as an applicant for admission affects his right to Due Process because applicants for admission are subject to the "entry fiction" which provides that, for legal and constitutional purposes, an alien stopped at the border is considered to remain at the border even if he is paroled into the country, and is treated as such for the purpose of determining his rights to relief.  *Id.*; *see also* [*Kay*], 94 F. Supp. 2d [at] 554[.].  The distinction is not one without a difference, as the Supreme Court in *Zadvydas* observed that it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," and that "once an alien [for legal purposes] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693.  The Court has likewise suggested that even for those aliens found within the United States, "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish [the removal of those aliens]."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  Indeed, "the Supreme Court has made clear that inadmissible aliens are entitled to less due process than are resident aliens."  *Maldonado*, 150 F.

---

[1] Petitioner argues that his prior deferred action status under DACA somehow affects his Due Process rights in this situation.  (*See* ECF Nos. 1; 5).  Petitioner does not explain how it affects his status, nor provides any support for this assertion.  This Court is aware of no caselaw which supports this assertion.  In any event, Petitioner's DACA deferred action status expired in April 2016, and Petitioner has presented no evidence that he has been granted an extension of that status or that he has been reattributed deferred status or been granted a visa.  As such, the question remains whether his detention comports with Due Process under § 1225(b)(2)(A).

5

Supp. 3d at 799 (citing *Demore*, 538 U.S. at 547 (O'Connor, J., concurring)). Indeed, as *Zadvydas* explained, an alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). By all appearances, then, Petitioner, as an alien deemed an applicant for admission who is legally treated as if stopped at the border is entitled to something less than the full panoply of rights usually conferred by the Due Process Clause. *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to hold otherwise would permit the Government to "torture or summarily execute them" which would amount to an absurd proposition).

Thus, although Petitioner is likely not entitled to all the rights Due Process would provide an alien considered within this country, he has at least some entitlement to proper procedures. The question that arises, then, is whether mandatory detention *ad infinitum* comports with that entitlement. On this issue, however, neither the Supreme Court nor the Third Circuit has provided clear guidance. While the Third Circuit has not provided this Court with guidance as to whether indefinite detention under § 1225(b)(2)(A) comports with the Constitution, the Court has addressed a similar statutory provision in the form of § 1226(c). Like § 1225(b)(2)(A), § 1226(c) expressly provides that the Government shall take into custody those removable aliens who have been convicted of certain classes of offenses, and does not provide for a bond hearing once those aliens have been so detained. In *Diop*, however, the Third Circuit held that detention subject to § 1226(c) was subject to a reasonable time limitation as to interpret the statute to permit indefinite detention would run the risk of running afoul of the Due Process Clause. 656 F.3d at 231-32. Thus, as a matter of statutory interpretation and constitutional avoidance, the Third Circuit held that § 1226(c) authorized mandatory detention for only a reasonable period of time, after which the Government would be required to justify the alien's continued detention at an individualized bond hearing. *Id.* at 231-34.

Thus, the Third Circuit held in *Diop* that the federal courts, in determining whether an alien subject to mandatory detention under § 1226(c) was entitled to a bond hearing, must determine whether the length of his detention was "reasonable," which is a "function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 234. Such a determination is a fact specific inquiry

6

"requiring an assessment of all of the circumstances of a given case." *Id.* While the Court in *Diop* did not provide specific guidance as to the length of time which would cast doubt on the reasonableness of a given alien's detention, *see* 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014), the Third Circuit provided further guidance in *Chavez-Alvarez*. In *Chavez-Alvarez*, the Third Circuit clarified that, at least where no evidence of bad faith on the part of the petitioner has been presented, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore*, and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478.

Given this case law in regard to aliens present within this country subject to mandatory detention, the question here becomes whether the lesser amount of Due Process to which unadmitted aliens subject to the entry fiction are entitled requires that 1225(b)(2)(A) be interpreted to include a similar reasonableness limitation. Several Courts have held that the distinction between removable aliens present within this country and those not yet admitted and legally at the border is insufficient to warrant a difference in treatment, and that § 1225(b)(2)(A) is subject to a reasonable time limitation as a result. *See, e.g., Maldonado*, 150 F. Supp. 3d at 804-812; *Bautista v. Sabol*, 862 F. Supp. 2d 375, 377 (M.D. Pa. 2012); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1081-84 (9th Cir. 2015) (holding that aliens detained under §§ 1226(a), 1226(c), 1225(b)(2)(A), and 1231(a) are all entitled to a bond hearing after six months as all of those statutory provisions are subject to reasonable time limitations), *cert. granted sub nom.*, *Jennings v. Rodriguez*, --- S. Ct. ---, 2016 WL 1182403 (June 20, 2016). Other Courts have instead held that inadmissible aliens are treated differently from those subject to removal already present within this country, and therefore are not entitled to release on bond during the pendency of their removal proceedings. *See, e.g., Perez v. Aviles*, --- F. Supp. 3d ---, ---, 2016 WL 3017399, at * 3 (S.D.N.Y. 2016); *see also See Cardona v. Nalls–Castillo*, --- F.Supp.3d ---, ---, 2016 WL 1553430, at *1 (S.D.N.Y. Apr. 14, 2016); *Salim v. Tryon*, No. 13-6659, 2014 WL 1664413, at *2 (W.D.N.Y. Apr. 25, 2014) (LPR was lawfully detained during removal proceedings under § 1225(b)(2)(A)); *Ferreras v. Ashcroft*, 160 F.Supp.2d 617, 622–27 (S.D.N.Y.2001) (holding the same for LPR detained for over 15 months); *Viknesrajah v. Koson*, No. 09-6442, 2011 WL 147901, at *5–6 (W.D.N.Y. Jan. 18, 2011) (holding § 1225(b) authorized continued detention of alien in custody for over two years during

pendency of removal proceedings); *but see Arias v. Aviles*, No. 15-9249, 2016 WL 3906738, at *3 (S.D.N.Y. July 14, 2016) (disagreeing with *Perez* and holding that § 1225(b)(2)(A) is subject to a reasonable time limitation).

Having weighed the lesser Due Process rights to which applicants for admission are entitled with the grave specter of interminable detention, this Court must conclude that the former class of cases better encapsulate the state of the law and that an alien's detention subject to § 1225(b)(2)(A) is subject to the limitation that his detention may continue only for a reasonable time at which point his continued detention would need to be warranted by more than a presumption based on his status as an applicant for admission alone. In so concluding, however, this Court does not agree with the Ninth Circuit's conclusion that the distinction between an alien detained pending removal who is already in this country and one who remains legally at the border as an applicant for admission is without difference. The level of Due Process protections to which the two classes are entitled is not equal, and any remedy fashioned for applicants for admission would have to uphold and continue the entry fiction even if those aliens were released on bond or under an order of supervision. The Court also notes that there are distinctions between § 1225 and § 1226 which also must be taken into account in fashioning a remedy – specifically, under § 1226, for removable aliens present in this country, detention subject to bond is the default rule and mandatory detention the exception, whereas § 1225 essentially sets nigh mandatory detention as the default rule with parole for humanitarian reasons the exception.

In this case, however, the Court need not address these issues because this Court concludes that the length of Petitioner's detention has not yet reached a length of time wherein it has become unreasonable. While this Court agrees that § 1225(b)(2)(A) must be subject to a reasonable time limitation, what is reasonable under § 1225(b)(2)(A) for an applicant for admission not entitled to the greater protections provided to an alien already present in this country may well be unreasonable for those aliens detained under § 1226(c). Essentially, the distinction in the level of protections between the two classes of aliens is one of magnitude rather than entitlement to relief – an alien who is legally considered to remain at the border has no right of entry into this country and is entitled to lesser protections than one who has already entered, and as such he may be held for a greater length of time before his continued detention raises Due Process concerns. While it is unclear at what point in time such concerns would rise to the level of requiring

>   redress, this Court concludes that Petitioner's current detention – for just under a year – does not appear to be unreasonable given the purposes of § 1225 that such detention serves – preventing the entry of an inadmissible alien into this country. It thus appears that detention of nearly a year would certainly be more reasonable under § 1225(b)(2)(A) than that which is reasonable under § 1226(c), given the lesser level of Due Process to which aliens subject to the entry fiction are entitled. Thus, this Court declines to extend *Chavez-Alvarez*'s holding that, absent bad faith, a § 1226(c) detainee's detention becomes unreasonable at some point less than a year to inadmissible aliens held pursuant to § 1225(b)(2)(A), and instead concludes that, at this time, Petitioner's detention has yet to become unreasonable, and that he is therefore not entitled to relief.

*Damus*, 2016 WL 4203816 at *2-4.

This Court agrees with the conclusions reached in *Damus*. As such, Petitioner's detention in this case, which has lasted for just over six months at this time and remains considerably less lengthy than the nearly a year found reasonable in *Damus*, clearly does not impugn Due Process. Indeed, even if Petitioner's detention were subject to the holding of *Chavez-Alvarez*, he would still not be entitled to relief. Under that case detention does not become unreasonable until sometime *between* six months and a year, and the Third Circuit has never held that detention becomes automatically unreasonable because detention crests six months. Thus, that Petitioner has been held for six months alone would be insufficient to warrant a bond hearing under *Chavez-Alvarez*. Given the fact that inadmissible arriving aliens are subject to lesser Due Process protections than those subject to § 1226(c), it follows as a result that Petitioner is not entitled to relief here as his detention has not yet become unreasonable. This Court will therefore deny his habeas petition without prejudice.

## III. CONCLUSION

      For the reasons stated above, this Court will deny Petitioner's habeas petition without prejudice to the filing of another petition should the length of Petitioner's detention become unreasonable. An appropriate order follows.


Dated: October 24, 2016                        *s/ Susan D. Wigenton*
                                                     Hon. Susan D. Wigenton,
                                                       United States District Judge